Peter J. Horton, Esq. (SBN: 227678)
**NEWMAN & HORTON, LLP**
165 East High Street, Suite 202
Moorpark, California 93021
Phone: (805) 232-3220
Facsimile: (805) 456-0615
Email: peter@newmanandhorton.com

# UNITED STATES DISTRICT COURT

# THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN NICHOLS, (an individual),<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA, DAVID DIMMICK, (an individual) JOSEPH BURPO (an individual) and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.:<br><br>**PLAINTIFF JOHN NICHOLS' COMPLAINT FOR:**<br><br>**1)     FIRST AMENDMENT RETALIATION**<br>**2)     FOURTH AMENDMENT, FOURTEENTH AMENDMENT, 42 U.S.C. §1983.**<br>**3)     RETALIATION / WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA LABOR CODE §6310**<br>**4)     RETALIATION / WRONGFUL TERMINATION IN VIOLATION OF CALIFORNIA LABOR CODE §1102.5; and** |

PLAINTIFF JOHN NICHOLS' COMPLAINT

**5)    WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**JURY TRIAL DEMANDED**

**TO THE HONORABLE COURT:** COMES NOW PLAINTIFF JOHN NICHOLS (hereafter "PLAINTIFF" or NICHOLS") who demands a jury trial, and seeks monetary compensation against all of the above-mentioned Defendants, as follows:

**PRELIMINARY STATEMENT**

1. Defendant Department of the Navy stripped Plaintiff John Nichols of his security clearance thereby effectively terminating his employment with the U.S. Navy in retaliation for Plaintiff reporting policy violations and potential criminal acts of his supervision. Plaintiff reported these concerns solely to attempt to remedy them. Plaintiff reported violations of law and policy to citizens outside his chain of command. Plaintiff suffered retaliation because of his whistleblowing activities.  Plaintiff was illegally searched and seized in violation of the 4th and 14th amendments during his prescheduled return to work. Plaintiff brings this action against Defendant

for retaliation and wrongful termination in violation of the, California Labor Code §6310 and 1102.5, as well as under common law.

**PARTIES**

2.      At all times relevant, Plaintiff John Nichols "Plaintiff" or "Nichols" was a resident of the County of Ventura, State of California.

3.      Based on information and belief, Plaintiff alleges that Defendant is a corporation with its principal place of business in the Department of the Navy.

4.      Defendant is the United States of America, including but not limited to the United States Department of the Navy, United States Navy (collectively the "Navy" and or the "Government").

5.      At all times relevant herein, defendant David Dimmick (hereafter also "Dimmick"), and DOES 1 through 3 were residents of the County of San Diego, and were peace officers, special agents, and/or civilian employees, agents and representatives of the Navy and employees, agents and representatives of the State of California. At all times relevant hereto, said defendants were acting within the course and scope of their employment as peace officers, special agents, and/or civilian employees of the Department of the Navy, a department and subdivision of the United States of America.

6.      At all times relevant herein, defendant Joseph Burpo (hereafter also "Burpo"), and DOES 1 through 3 were residents of the County of Ventura, and were peace officers, special agents, and/or civilian employees, agents and representatives of the Navy. At all times relevant hereto, said defendants were acting within the course and scope of their employment as peace officers, special agents, and/or civilian employees of the Department of the Navy, a department and subdivision of the United States of America.

7.      Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and, on that basis, alleges that each of the fictitiously named Defendants claims an interest in the subject matter of this controversy, or is responsible in some manner for the damages hereinafter alleged by the Plaintiff.

8.      Except as noted otherwise, wherever in this complaint reference is made to any act of "Defendant," such allegations shall be deemed to mean all named Defendants and DOES 1 through 100, or their officers, agents, managers, representatives and employees. The actions alleged against persons in this

PLAINTIFF JOHN NICHOLS' COMPLAINT

complaint were authorized by Defendants and taken while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties with Defendants.

9.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each Defendants was the agent, servant or employee of each of the other Defendants, and in doing the things hereinafter alleged, was acting in the course and scope of its authority as such agent, servant or employee, and with the permission and consent of each of the other Defendants. Plaintiff is informed and believes and thereon alleges that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each of the Defendants are legally attributable to the other Defendants.

## NATURE OF THE ACTION AND JURISDICTION

10.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331. (Federal Question). Competent subject matter jurisdiction and venue exist, in whole or in part, pursuant to the following federal statutes:

a.      42 U.S.C. §1983;

b.      Federal Civil Rights Jurisdiction:  28 U.S.C. §§1343(1) - (5);

c.      Federal Question Jurisdiction:  28 U.S.C. §1331;

d.     Federal General Venue:  28 U.S.C. §1391(b).

11.     This Court also has jurisdiction of this action pursuant to 42 U.S.C. §2000e *et seq.* and the court may exercise supplemental jurisdiction of all related territorial based claims.

12.     Plaintiff has complied with all conditions precedent to maintain an action under Title VII and 42 U.S.C. §2000 et seq., to wit:

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

13.     On March 26, 2012, Plaintiff reported to Naval Base Ventura County "NBVC" for first day of work as a police officer.

14.     In July 2012, Plaintiff was informed of the attempted homicide cover-up of David Nelson. There were pictures of the victim David Nelson all over the department bulletin boards. Many officers were upset by the manner in which the Department handled the investigation.

15.     On January 17, 2013, Plaintiff was ordered into the office with Deputy Chief of Police "DCOP" Sizemore and Larry Jones where Jones stated he heard that Plaintiff had been stating that Jones and Sizemore should be fired for covering up the David Nelson attempted homicide. DCOP Sizemore called Plaintiff an "organizational terrorist" and Jones stated he wanted to fire Plaintiff but could not.

16.     During the January 17, 2013 meeting, Sizemore stated it was management's perception that Plaintiff was having a relationship with a victim on a case Plaintiff investigated. Plaintiff was upset about the false accusation made by Sizemore. Sizemore then transferred Plaintiff to day shift resulting in Plaintiff losing night shift differential pay. Sizemore told Plaintiff he needed to have more respect for him and then he dismissed Plaintiff.

17.     In February 2013, Plaintiff was ordered to meet with Director Jones and DCOP Sizemore in Jones' office.  Jones stated that he has heard Plaintiff had stated Jones and Sizemore should be fired for covering up Police Captain Clarence May's son Joseph May beating David Nelson nearly to death at the RV park on base. No charges were ever filed against Joseph May. Plaintiff informed Jones and Sizemore that the perception around the department was that everyone was talking about a criminal cover-up and police corruption in our own ranks. Officers felt they could not do their jobs morally and ethically because of how the Department had handled the investigation. Captain May was allowed to stay on the police department with no repercussions.

18.     On February 4, 2013, Jones placed Plaintiff on administrative leave and sent him to a fitness for duty examination. Jones told Plaintiff, that he was paranoid, disrespectful, and the David Nelson incident was false. Jones also stated

that Plaintiff had no right to inquire about the cover-up. Plaintiff was informed once cleared from the doctor that he would be put on dayshift for further training.

19.     On February 27, 2013, Plaintiff reported to psychologist Robin Grant "Grant" who cleared Plaintiff for duty. Doctor Grant's impression was that Plaintiff was being treated unfairly by management because he has spoken up about the criminal cover-up. In March 2013, Plaintiff was cleared to return to work fit for full duty on dayshift.

20.     In August 2014. Plaintiff new Director Boyd Hodges "Hodges" about pulling documentation and medical paperwork out of his personnel record as required per policy after six months. Chief Warrant Officer Burpo informed Plaintiff that he cleared out my personnel record. Burpo's statement would be proven false after the Defendants relied on this paperwork to revoke his security clearance in June 2017.

21.     In May or June 2015, a training team from San Diego came up to inspect NBVCFP procedures.  Plaintiff was approached by a training team member and told he heard about the toxic work environment at NBVC, the attempted homicide cover-up and management misconduct. Plaintiff told the trainer what he believed was happening at NBVC.

22.     The next morning, Burpo approached Plaintiff in the hallway of the armory and told him that if he had any bitches, gripes, complaints that Plaintiff needed to go to him and not be airing out the Department's dirty laundry. Burpo told Plaintiff to report to his office. Multiple officers were present in Burpo's office as he told Plaintiff he should not be airing out the dirty laundry and the problems of the department. Plaintiff responded that the inspection team member approached him and questioned him about the incidents at NBVC.

23.     On July 7, 2015, Lieutenant Frank Forbes "Forbes" was talking to officers, including Plaintiff, in the report writing room. Captain Rick Jordan "Jordan" came up behind Forbes and shoved him in a violent manner causing Forbes to lose his balance. Jordan ordered Forbes to get into his office right now. Forbes went with Captain Jordan to his office and returned approximately five minutes later. Forbes stated to the three officers present that Captain Jordan had just assaulted him. Forbes was visibly shaken and upset. That night, Plaintiff and two other officers wrote reports to Forbes about the workplace violence assault they witnessed.

24.     On September 10, 2015, Plaintiff signed up for advanced radar training for overtime and was initially approved. An hour into the first day of Lidar training, Plaintiff was told by the trainer that Burpo stated Plaintiff could not

PLAINTIFF JOHN NICHOLS' COMPLAINT

attend the training. When Plaintiff filed the overtime for his attending the training, Plaintiff was informed Burpo refused to pay the overtime for Plaintiff's time spent in the training. Plaintiff filed a grievance against Burpo for retaliation and hostile work environment. Dimmick failed to investigate Plaintiff's complaint.

25.    On October 2, 2015, Burpo approached Plaintiff and demanded to speak with Plaintiff regarding the grievance he had filed against Burpo for creating a hostile work environment. Burpo refused to allow Plaintiff to leave without discussing the issue with him. Plaintiff contacted his union representative, who told plaintiff that, he had already told Burpo that Plaintiff wanted to go speak about the hostile work environment with the Commanding Officer of the base.

26.    Plaintiff and his union representative met with Burpo. Plaintiff discussed his grievance against Burpo for unfair treatment, retaliation, and creating a hostile work environment. During the meeting with Burpo, Plaintiff inquired about the workplace violence (assault) that Plaintiff and two other officers had witnessed wherein Captain Jordan had assaulted Lieutenant Forbes in the report writing room on July 7, 2015. Plaintiff specifically asked Director Burpo what was going to be done about Captain Jordan hitting Forbes. Plaintiff informed Burpo that the perception is that he was condoning workplace violence by not doing anything about the assault. Burpo's response that it was none of

Plaintiff's business how things were handled. Burpo told Plaintiff, Forbes needed to have "thicker skin."

27.    The conversation proceeded to Police officer safety (manning issues) after Plaintiff mentioned Burpo's prior threats to discipline Plaintiff regarding overtime shifts. Burpo stated that he was responsible for making sure each shift had the appropriate and equal number of personnel on each shift. Plaintiff then stated that it is sad that it took incidents like the Fort Hood shooting in order for personnel issues (Police Officer safety) to be addressed and that the manning issues needed to be addressed in order to prevent and respond to a major incident if it occurred. Director Burpo then stated that the Fort Hood incident was an insider threat and that he had some concern about the statement that Plaintiff had just made.

28.    Union representative Oliva then interrupted and clarified Plaintiff's remark by reiterating that the manning issues were a concern for the safety and wellbeing of the officers in the department and that Plaintiff's comment was an attempt to relay concern regarding manning issues and police officer safety. Director Burpo stated he had no further issues or concerns regarding Plaintiff's comments.

29.     Plaintiff received a phone call from the Watch Commander asking Plaintiff if he wanted to stay and work overtime dayshift because of the manning issues shortly after the conversation ended with Burpo. Burpo stated that Plaintiff could have stayed and worked if he wanted to and showed no further concern nor made any additional comments about Plaintiff's statements during the grievance meeting. After the meeting Plaintiff received a call from his union representative that Plaintiff was downloaded and not able to draw his weapon. Plaintiff was assigned to desk duty and told by David Dimmick "Dimmick that Plaintiff would need to see a doctor regarding his fitness for duty.

30.     On October 27, 2015, Plaintiff met with Congresswoman Julia Brownlee's office caseworker Arturo Alacala "Alacala". Plaintiff reported the Navy's elimination of incentive pay, the David Nelson incident,  the hostile work environment at NBVC, and the workplace violence that he had witnessed.

31.     On October 30, 2015, Plaintiff was issued a Letter of Caution for Inappropriate Conduct by Dimmick for comments made during his grievance meeting.

32.     On November 18, 2015, Plaintiff received his step 2 grievance response wherein Burpo agreed that he had been retaliating against Plaintiff and also agree to treat me fair and impartial. Need this document **see email**

PLAINTIFF JOHN NICHOLS' COMPLAINT

33.     On November 24, 2015, Plaintiff filed a case with OSC regarding the David Nelson criminal cover-up.

34.     On December 9, 2015, Plaintiff spoke with an FBI agent about David Nelson criminal cover-up.

35.     On December 17, 2015, Plaintiff received an email from OSC attorney Peta Irving Brown looking at the complaint I filed for abuse of authority and the workplace violence.

36.     In January 2016, Plaintiff spoke to DOD IG regarding workplace violence he witnessed.

37.     On March 7, 2016, Plaintiff spoke to supervisor Dulce Valencia "Valencia" about his father's illness and need to utilize emergency leave. Plaintiff had purchased an airline ticket. Valencia informed Plaintiff that Dimmick and Burpo said Plaintiff could not go home to see his father before his death. Plaintiff traveled to Oklahoma to be present when his father passed away.

38.     On April 7, 2016, Plaintiff returned to work from emergency leave and met with Dimmick. Dimmick issued Plaintiff a 14 day suspension for RFI incident.

39.     In April 2016, Plaintiff contacted reporter John Moore from the Ventura County Star and spoke to him about letter Plaintiff wrote regarding police

PLAINTIFF JOHN NICHOLS' COMPLAINT

corruption and attempted homicide cover-up. Plaintiff also contacted CNBC, the Navy Times.

40. On April 13, 2016, Plaintiff received an email from Burpo stating that a female employee had lodged a complaint against me for harassment.

41. On April 20, 2016, Plaintiff met with a command management investigator regarding the harassment complaint. Plaintiff denied all allegations of any form of contact with Richardson.

42. On April 22, 2016, Plaintiff contacted CNRSW regarding letter he wrote concerning police corruption and attempted homicide cover-up.

43. On May 2, 2016, Plaintiff met with CNRSW operations officer LCDR Nathan Butikofer "Butikofer" conducting management inquiry into police corruption at NBVCFP to discuss David Nelson incident and the RFI incident.

44. On May 11, 2016, Plaintiff contacted Senator John McCain's office regarding letter he wrote about police corruption and attempted homicide cover-up.

45. In May 2016, Plaintiff contacted Andrea Brotherton Navy IG civilian regarding letter he wrote about police corruption and attempted homicide cover-up.

PLAINTIFF JOHN NICHOLS' COMPLAINT

46.     On May 26, 2016, Plaintiff met with Dimmick. Dimmick rescinded the 14 day suspension and reissued a 30 calendar day suspension.

47.     On June 9, 2016, Plaintiff sent letter to Chief Naval Officer "CNO" office John Richardson regarding police corruption and attempted homicide cover-up.

48.     On June 13, 2016, Plaintiff emailed channel 10 news letter regarding police corruption and attempted homicide cover-up.

49.     On July 1, 2016, Plaintiff received an email from CNIC IG Karla Hammett regarding letter I sent to Navy IG office concerning police corruption and attempted homicide cover-up. What does it say? **See email**

50.     On July 22, 2016, Plaintiff met with Dimmick and was officially suspended for 30 calendar days. Suspension was from July 25, 2016 through August 23, 2016.

51.     Plaintiff returned from his suspension on August 24, 2016. Upon his return to the base, Plaintiff was pulled out of his vehicle, transported in a police car and searched in violation of his 4th amendment rights. After the illegal search Plaintiff met with Dimmick, was placed on administrative leave pending management decisions.

PLAINTIFF JOHN NICHOLS' COMPLAINT

52.     On October 6, 2016, Plaintiff met with Dimmick and current supervisor Valencia. Dimmick ordered Plaintiff to return to work. No reason was given for Plaintiff's placement on administrative leave.

53.     On October 19, 2016, Plaintiff met with Senator Barbara Boxer case worker director Nicolas Rodriguez in their office. Plaintiff discussed the letter he wrote regarding police corruption; attempted homicide cover-up and false harassment allegations resulting in discipline and being illegally searched upon return from suspension.

54.     On December 12, 2016, Plaintiff received an email from NRSW OGC Alexandra Abbey offering Plaintiff a demotion, to stay assigned at PASSID. Part of the agreement included that Plaintiff would never bring another complaint against the Navy or be entitled to step increases or retention incentives. **See email**

55.     In January 2017: met with Sabiha Khan Case worker Senator Dianne Feinstein's office to discuss letter he wrote about police corruption and attempted homicide cover-up.

56.     On April 19, 2017, Plaintiff met with NBVC Security Manager Steve Griswold "Griswold" who issued me a letter of intent to revoke my security clearance.

57.     On April 24, 2017, the Commanding Officer of NBVC suspended my security clearance. Dimmick placed me on administrative leave.

58.     On May 2, 2017, Plaintiff met with Dimmick and was issued a proposed indefinite suspension and refused to allow Plaintiff to have union representation.

59.     On May 30, 2017 Plaintiff had a teleconference meeting with Matt Crews, Alicia Steen, Dan Barley. Plaintiff discussed the continued retaliation and reprisal against him. Plaintiff requested they allow Plaintiff to work at another job that does not require a security clearance or leave me on administrative leave with pay so that I may continue to receive benefits for my family. In the past, NBVCFP management officials Clarence May and Larry Hawkins were put on administrative leave for a full year with pay while their disciplinary and security clearance issues were addressed.

60.     On June 12, 2017, Matt Crews further upheld the indefinite suspension. The decision resulted in Plaintiff losing pay and benefits causing financial hardship which forced plaintiff to leave California to relocate back to Oklahoma.

61.     On October 23, 2017, Plaintiff was informed by Valencia that Dimmick has told Valencia to make negative comments about Plaintiff because he

PLAINTIFF JOHN NICHOLS' COMPLAINT

is a bad employee. Dimmick also told Valencia that, Dimmick and NBVCFP

management is trying to get rid of Plaintiff. Dimmick also encouraged Valencia to

tell people that Plaintiff threatened people.

## FIRST CLAIM FOR RELIEF
## FIRST AMENDMENT RETALIATION
## [AS TO ALL INDIVIDUAL DEFENDANTS ]: 1st AMENDMENT, 42 U.S.C. §1983

62.     Each and every allegation set forth in the preceding paragraphs is

incorporated herein by this reference with the same effect as if realleged

herein.

63.     This action is brought pursuant to 42 U.S.C. §1983 for violation of

Plaintiff's rights under the First Amendment.

64.     Plaintiff engaged in numerous activities protected under the First

Amendment, i.e. free speech.

65.     Defendants acted under color of law at all applicable times herein.

66.     Defendants have retaliated in additional ways including loss of

security clearance, disciplinary actions, administrative leave, and

termination.

67.     Plaintiff's protected speech/conduct or chilling the Plaintiff's

protected speech/conduct was a substantial or motivating factor for the

Defendants' actions.

68.     Plaintiff suffered significant general (non economic) and special (economic) damages in a sum according to proof and in excess of the minimum jurisdiction of this court.  Plaintiff has experienced a significant loss of wages and a significant loss of his ability to obtain and maintain gainful employment as a proximate result of the misconduct of all Defendants.

69.     Because the acts and omissions of Defendants and each of them were carried out in a deliberate, cold, callous, intentional and/or unreasonable manner, causing injury and damage to Plaintiff as set forth above, and done with a conscious disregard of Plaintiff's rights and safety, Plaintiff requests the assessment of punitive damages against these Defendants in an amount appropriate to punish or set an example of these Defendants.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES ALL DEFENDANTS: FOURTH AMENDMENT, FOURTEENTH AMENDMENT, 42 U.S.C. §1983.**

70.   Each and every allegation herein by this reference with the same effect as if realleged herein. This action is brought pursuant to 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

71.    At all times relevant hereto, Plaintiff possessed the right, guaranteed by the Fourth Amendment of the United States Constitution, to be free from unreasonable searches and seizures by peace officers acting under the color of law.

72.    As described in Section III above, all defendants, and DOES through 6 violated Plaintiff's Fourth Amendment rights by unlawfully and unreasonably detaining, handcuffing, arresting and imprisoning her without reasonable suspicion or probable cause.

73.    In doing these things, said defendants acted specifically with the intent to deprive Plaintiff of his constitutional rights under the Fourth Amendment to be free from unreasonable searches.

74.    Said defendants subjected Mr. Nichols to the aforementioned deprivations by either actual malice, deliberate indifference or a reckless disregard of his rights under the U.S. Constitution.

75.    As the actual and proximate result of the acts and omissions of said defendants as described herein, Plaintiff was made to lose his freedom and liberty for the period stated above in Section III, this in violation of the Fourteenth Amendment's procedural and substantive due process guarantees.

76.    Plaintiff is a law enforcement officer. When defendants brought the false charges against him, Nichols was relieved of duty without pay. As a result, plaintiff lost wages, overtime opportunities, the chance to promote and pension benefits, including the accumulation of time for retirement and his security clearance which prevents him from obtaining gainful employment in his chosen career.

77.    In addition to causing special damages for lost wages, earnings opportunities, promotional opportunities which include future raises and earnings, lost pension benefits, medical, psychological and other expenses, the plaintiff has suffered with general damages including without limitation pain, suffering, emotional distress, fear, trepidation, lost reputation, and other harms to be proven at time of trial.

78.    The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all defendants.

### THIRD CLAIM FOR RELIEF
### FOR RETALIATION IN VIOLATION OF
### CALIFORNIA LABOR CODE §6310
### (Against All Defendants)

PLAINTIFF JOHN NICHOLS' COMPLAINT

79.     As a third, separate and alternative claim for relief, Plaintiff alleges:

80.      Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33, inclusive, above.

81.      At all times during Plaintiff's employment with Defendants, California Labor Code §6310 was in full force and effect and binding on Defendant. This statute makes it unlawful for an employer to retaliate against an employee for making a bona fide oral or written complaint to his or her employer of unsafe working conditions or work practices, in his or her employment or place of employment.

82.     On information and belief, Plaintiff alleges that his complaints, as alleged above, regarding safety violations lead to retaliation against him in the terms and conditions of his employment and to his termination.

83.     As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

PLAINTIFF JOHN NICHOLS' COMPLAINT

84.     Plaintiff is entitled to a $25,000 civil penalty pursuant to Labor Code §§6310 and 6428. Plaintiff intends to exhaust the requirements of Labor Code §2699.3 and will seek leave to amend this Complaint as a matter of right to allege exhaustion of the requirements therein.

85.     The conduct of Defendants, and each of them, as alleged above was fraudulent, oppressive and malicious and was undertaken with conscious or reckless disregard of Plaintiff's rights. Such conduct was undertaken by employees, officers and managing agents of all Defendants, and was ratified at the highest levels of Defendants' management. As a result, Plaintiff is entitled to an award of punitive and exemplary damages in an amount sufficient to deter Defendants and others similarly situated, from such conduct in the future.

86.     Plaintiff has incurred and will incur attorney fees and costs in the bringing of this action, and is entitled to recover such fees and costs pursuant to Labor Code §6310 and 2698 et. Seq. Plaintiff is entitled to all relief necessary to make him whole.

**FOURTH CLAIM FOR RELIEF**
**FOR RETALIATION IN VIOLATION OF**
**CALIFORNIA LABOR CODE §1102.5**
**(Against All Defendants)**

87.    As a third, separate and alternative claim for relief, Plaintiff alleges:

88.    Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40, inclusive, above.

89.    At all times during Plaintiff's employment with Defendants, California Labor Code §1102.5 was in full force and effect and binding on Defendant. Labor Code §1102.5 prohibits an employer from retaliating against an employee for, among other things, disclosing information to a government or law enforcement agency, a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance if the employee has reasonable cause to believe that the information discloses a violation of a state or federal statute regardless of whether disclosing the information is part of the employee's job duties.

90.    On information and belief, Plaintiff alleges that Defendant terminated Plaintiff's employment in violation of California Labor Code §1102.5 because he disclosed information to both the U.S. Government and his

supervisors that he had reasonable cause to believe constituted a violation of federal law and/or because the employer feared he would report other such violations to a government or law enforcement agency, and/or because Plaintiff refused to participate in activity that would result in violations of federal law.

91.    As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

92.    Plaintiff is entitled to a $10,000 civil penalty pursuant to Labor Code §§1105.5(f). Plaintiff intends to exhaust the requirements of Labor Code §2699.3 and will seek leave to amend this Complaint as a matter of right to allege exhaustion of the requirements therein.

93.    The conduct of Defendants, and each of them, as alleged above was fraudulent, oppressive and malicious and was undertaken with conscious or reckless disregard of Plaintiff's rights. Such conduct was undertaken by

PLAINTIFF JOHN NICHOLS' COMPLAINT

employees, officers and managing agents of all Defendants, and was ratified at the highest levels of Defendants' management. As a result, Plaintiff is entitled to an award of punitive and exemplary damages in an amount sufficient to deter Defendants and others similarly situated, from such conduct in the future.

94.     Plaintiff has incurred and will incur attorney fees and costs in the bringing of this action and is entitled to recover such fees and costs pursuant to Labor Code §§1102.5 and 2698 et. Seq. Plaintiff is entitled to all relief necessary to make him whole.

**FOURTH CLAIM FOR RELIEF**
**FOR WRONGFUL TERMINATION**
**IN VIOLATION OF PUBLIC POLICY (FEHA)**
**(Against All Defendants and DOES 1-10)**

95.     As a fourth, separate and alternative cause of action, Plaintiff alleges:

96.     Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 47, inclusive, above.

97.     Defendants' termination of Plaintiff violated the public policies of the United States and the State of California as reflected in, among other statutes, and regulations thereunder, the False Claims Act, 31 U.S.C. 3729

et seq., OSHA Standard 2206, the Maritime Labor Convention, and 46 U.S.C. §10303.

98.    As a direct result of the retaliatory conduct alleged above, Plaintiff has suffered and continues to suffer substantial damages, including, among other things, substantial losses in earnings. As a further proximate result of Defendant's retaliatory actions against Plaintiff, as alleged above, he has been harmed in that he has suffered, humiliation, mental anguish and emotional distress, including but not limited to, humiliation, depression, anxiety, and insomnia.

99.    The conduct of Defendants, and each of them, as alleged above was fraudulent, oppressive and malicious and was undertaken with conscious or reckless disregard of Plaintiff s rights. Such conduct was undertaken by officers and managing agents of all Defendants, and was ratified at the highest levels of Defendants' management. As a result, Plaintiff is entitled to an award of punitive and exemplary damages in an amount sufficient to deter Defendants and others similarly situated, from such conduct in the future.

**PRAYER FOR RELIEF**

1.    On all Counts, for compensatory damages, including loss of earnings and other economic damages, as well as damages for mental anguish and emotional distress according to proof;

2.    On all counts , for punitive and exemplary damages;

3.    On all counts for attorneyfees as permitted by law;

4.    On all Claims for prejudgment interest as allowable by law; and,

5.    On all Causes of Action, for Plaintiffs costs of suit; and

For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff John Nichols hereby demands a jury trial.

Dated: June 19, 2018                    Respectfully Submitted,

Peter J. Horton, Esq.
**NEWMAN & HORTON, LLP**
Attorney for Plaintiff,
JOHN NICHOLS